STATE OF NEBRASKA, APPELLEE, V. KENNETH DEGROOT, APPELLANT.

430 N.W.2d 290

Filed October 7, 1988.   No. 87-935.

Charles F. Fitzke, Scotts Bluff County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

Following a trial by jury, the defendant was convicted of forcibly breaking and entering a residence with the intent to steal. He has appealed and assigns as error that (1) the court failed to declare a mistrial when the State's witness volunteered inadmissible evidence; (2) the court allowed witnesses to testify who had violated the sequestration order; and (3) the court allowed evidence of the defendant's attempt to persuade a witness to testify falsely for him. We affirm.

On April 8, 1987, Terry Metcalf and her family had retired for the evening at their Scottsbluff residence. The doorbell rang, but she saw no one at the door. Shortly thereafter, she observed a man smoking a cigarette on her front porch. She notified her husband, but by the time they returned to the front of the house, the man was gone. Mrs. Metcalf then walked toward her kitchen and saw a man walking out of her bedroom. Both she and the man screamed, the man apparently left, and she called the police.

After a chase, the police found the defendant under some evergreen bushes in a fenced yard some blocks away from the Metcalf residence. The defendant was taken to the Metcalfs' residence, where Mrs. Metcalf identified him as the man who had broken into their home.

The defendant's appearance matched the description given by Mrs. Metcalf before the defendant was arrested. A cigarette butt was found outside the Metcalfs' home the night of the crime. A serologist testified that the cigarette butt contained evidence of body fluids secreted by 31 percent of the caucasian population, and that defendant was a member of that percentage grouping. The bedroom window screen had been cut, and the defendant had a large butterfly knife with him when he was caught. Also, a footprint at the scene appeared to match the tread on the defendant's shoe.

At trial, the court granted defendant's motion to sequester the witnesses. The court instructed the witnesses that such an order

> means the witnesses remain out in the hall until they are called to testify, after they are called in to testify one by one. Since witnesses are sequestered that means one witness after he has testified should not go out and tell everybody what they said. The idea of sequestration of the witnesses is so that one witness does not know what another said and each are [sic] testifying fresh.

After Mrs. Metcalf testified, she apparently remained in the courtroom. Her husband then testified, followed by a police officer. The State then recalled Mrs. Metcalf, over objection by the defense, to identify the piece of screen about which the previous witness had testified as having come from her

bedroom window.

The defendant sought to establish an alibi to the effect that he was in the neighborhood to collect a debt from a friend and was only resting in a yard when he was found by the police. The State called a witness who offered a letter, written to him by the defendant, asking the witness to testify falsely about the alibi. The defense objected to admission of this letter.

The State also called an investigator from the county attorney's office to testify as to how she had first found out about the above-mentioned letter. When asked how she had happened to first see that letter, she began to testify, "About 20 minutes before that I had been talking to Larry [the person having the letter] about his knowledge of who could have - - -" and at that point a defense objection was sustained. She was then asked, "You were investigating or acting in your capacity as an investigator for the county attorney's office while you were talking to Larry Coleman; is that right?" The witness answered:

> I was showing Larry Coleman a copy of a threatening letter that had been sent to a witness in this case and he was looking at it to see if he could recognize the handwriting from someone in the jail. So he pulled out a piece of paper from his pocket - - -

at which point defense counsel objected and asked that "the testimony be stricken as unresponsive and as a surprise testimony." The objection was sustained and the answer ordered stricken, and the jury was admonished to disregard the testimony. At the next recess, the defendant's motion for a mistrial based on the foregoing testimony was overruled.

The jury was out but 30 minutes before returning with a verdict of guilty. A motion for a new trial was heard by the court, at which time the defense offered testimony by the defendant's girlfriend that she had seen some police officers together in the hallway, visiting with one another, at various times following the testimony of one or more of the officers and before one or more of the officers was yet to testify. The conversations which she heard were in no way connected with any testimony that any of the officers had previously given. The three officers themselves were called to testify, but denied

conversing about their testimony.

As to the first assignment of error, the trial court found that the testimony of the investigator was not "a purposeful effort on the part of the State to inject this evidence before the jury but resulted from inadvertence and from the witness preparation, and resulted from the witness not the prosecuting attorney." The court also noted that the evidence had been stricken and the jury admonished to disregard it.

The standard for determining whether declaring a mistrial is appropriate was spelled out in *State v. Archbold*, 217 Neb. 345, 351, 350 N.W.2d 500, 504 (1984), wherein this court stated:

> In order to prevent defeat of justice or to further justice during a jury trial, a mistrial is generally granted at the occurrence of a fundamental failure preventing a fair trial in the adversarial process. Some examples are an egregiously prejudicial statement by counsel . . . or *the introduction of incompetent matters to the jury, to the extent that any damaging effect cannot be removed by proper admonition or instruction to the jury.*

(Emphasis supplied.)

Thus, even in the case of error, declaring a mistrial is not necessarily required if the resulting prejudice can be cured by an admonition to the jury. As Justice Brennan said in his concurrence and dissent to *United States v. Young*, 470 U.S. 1, 24, n.2, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985), cited in *State v. Ross*, 220 Neb. 843, 374 N.W.2d 228 (1985), "an objection followed by admonition or instruction is typically presumed to be sufficient to dispel prejudice."

According to *State v. Borchardt*, 224 Neb. 47, 56, 395 N.W.2d 551, 557-58 (1986):

> A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. . . . Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

As stated in *State v. O'Kelly*, 193 Neb. 390, 391, 227 N.W.2d 415, 417 (1975), "When the jury is admonished to disregard objectionable questions and answers a mistrial ordinarily will not be granted."

Also, in *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986), the court held that sustaining the defense's motion to strike, as well as giving an instruction to the jury to disregard the improper testimony of the witness, was sufficient to remove the damaging effect, if any, of the testimony. The court found that although the witness' statement was unsubstantiated, the prejudice resulting was slight when considered in the context of all of the evidence.

According to *State v. Dittrich*, 191 Neb. 475, 478, 215 N.W.2d 637, 639 (1974), " '[t]he test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?' " Quoting *State v. Johnson*, 60 Wash. 2d 21, 371 P.2d 611 (1962). We do not believe that it did, and it was properly cured by the court's order striking it and directing the jury not to consider it. The first assignment of error is without merit.

The defendant next argues that the sequestration order was violated, and, therefore, certain testimony of one or more police officers should have been stricken. Although perhaps the spirit of the sequestration order was violated, technically, witnesses were not ordered to refrain from visiting with each other, but only not to talk about any matters to which they had previously testified. The trial court, in determining a factual question, concluded that there was no evidence of an actual violation of its order. The record supports such a finding. Furthermore, the testimony of Mrs. Metcalf was simply foundational for other testimony previously given. Certainly, there can be no error in allowing a witness to identify a piece of screen taken from her screen window.

Furthermore, "[w]e have held that in order to establish reversible error due to a violation of a sequestration order, the defendant must make a showing of prejudice." *State v. Cottingham*, 226 Neb. 270, 274, 410 N.W.2d 498, 501 (1987). "[D]efendant has made no showing of prejudice, which is

necessary to constitute reversible error due to a violation of a sequestration order." *State v. Hess*, 225 Neb. 91, 92, 402 N.W.2d 866, 867 (1987). See, also, *State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982); *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987).

The defendant acknowledges that he must show prejudice, and, as evidence of the prejudicial effect on the jury, he points to the fact that the guilty verdict was returned after only 30 minutes of deliberation.

In *State v. Brown*, 174 Neb. 387, 118 N.W.2d 328 (1962), this court held that the fact that the case was submitted to the jury at 4:11 p.m. and the jury returned a guilty verdict at 5:25 p.m. did not establish that the jury had acted with passion and prejudice. In the opinion, the court recognized that "[t]here is no rule which requires the jury to deliberate any particular length of time." *Id*. at 392, 118 N.W.2d at 331. See, also, 23A C.J.S. *Criminal Law* § 1368 (1961).

The defendant has offered no evidence, other than the relatively speedy verdict, of how he was prejudiced by the conduct of the witnesses, and no prejudice appears in the record. That assignment of error is also without merit.

Finally, the defendant argues that the court erred in allowing evidence of his attempt to procure false testimony. The defendant argues that this evidence was not relevant, that is, that it did not tend to prove or disprove that the defendant committed the burglary.

Larry Coleman was called as a witness for the State. He testified that the defendant, whom he knew as "Red," asked him to testify for him. He testified about the letter previously referred to, which was identified as having been written by the defendant. In substance, the defendant told the witness to testify that he, the witness, saw the defendant at a certain time and a certain place looking for a certain person, all of which would perhaps support defendant's alibi. Coleman testified that if he had testified in the way that the defendant had requested, he, the witness, would have been lying.

It is within the trial court's discretion to admit or exclude evidence on the ground of relevancy, and such rulings will be upheld on appeal absent an abuse of discretion. *State v. Hinn*,

229 Neb. 556, 427 N.W.2d 791 (1988); *State v. Methe*, 228 Neb. 468, 422 N.W.2d 803 (1988).

There was no abuse of discretion in the trial court's decision that evidence of the defendant's attempt to procure false testimony was relevant. In *Jarecki v Ford Motor Company*, 65 Mich. App. 78, 83, 237 N.W.2d 191, 193 (1976), in which the defendant gave erroneous information to the police regarding an accident, the court said:

> Where relevancy is in issue, the question we must decide is whether the evidence is sufficiently probative of a fact in issue to offset the prejudice that the evidence produces. A party may properly argue and introduce evidence relating to the opposing parties' attempts to suppress evidence or otherwise avoid the fair adjudication of a dispute.

See, also, 31A C.J.S. *Evidence* § 179 (1964) (evidence that a party attempted to prevent a fair trial, as by the fabrication of evidence, is admissible to show that he is conscious of the weakness of his case); and *Parsons v. Ryan*, 340 Mass. 245, 248, 163 N.E.2d 293, 295 (1960), wherein the court said: "There can be no doubt of the relevance of the evidence of [defendant's] evasive conduct and false statements to the issue of liability."

Defendant argues that permitting evidence of his attempt to suborn perjury violates his constitutional right to be presumed innocent. The court in *State v. Adair*, 106 Ariz. 4, 6, 469 P.2d 823, 825 (1970), touched on this point, holding that evidence that the defendant threatened witnesses if they would not testify for him was "admissible as being in the nature of an extra-judicial admission of guilt by the defendant's conduct evidencing a consciousness of guilt." See, also, *Church v. Tersigni*, 202 N.Y.S.2d 489 (1960); *Osborne v. Purdome*, 250 S.W.2d 159 (Mo. 1952); and *Great American Insurance Company v. Horab*, 309 F.2d 262 (8th Cir. 1962).

The State may properly argue and introduce evidence relating to the defendant's attempt to suppress evidence or otherwise avoid the fair adjudication of a dispute.

The judgment of the district court was correct, and it is affirmed.

AFFIRMED.