STATE OF NEBRASKA, APPELLEE, V.
BERNARD D. LONG, APPELLANT.

645 N.W.2d 553

Filed June 14, 2002.   No. S-01-662.

Deborah D. Cunningham for appellant.

Don Stenberg, Attorney General, and Samuel J. Bethune for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.
## NATURE OF CASE
Bernard D. Long (Long) was convicted of first degree murder and use of a weapon to commit a felony. He was sentenced to life imprisonment and a consecutive sentence of 5 to 10 years' imprisonment. Long appeals.

## SCOPE OF REVIEW
■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

## FACTS
On May 2, 2000, Long's brother Roland Long (Roland) was shot by Keith Fox, a member of the South Family Bloods, a gang located primarily in South Omaha. Roland was a suspected member of the 37th Avenue Crips, a rival gang of the South Family Bloods. Long, Terrence Nelson, and Christopher Grant witnessed Roland's shooting. Long testified that after the shooting, he purchased a gun on the street for $100.

On May 3, 2000, Long, Grant, Nelson, and Lenny Moss visited Roland at the hospital. Upon leaving the hospital, the four drove on Saddle Creek Road to Military Avenue. At 72d Street and Military Avenue, they noticed a vehicle next to them which was driven by McHenry Norment, a South Family Bloods gang member. When Norment observed the parties in the Long vehicle, he brandished a semiautomatic handgun. The Long vehicle

then turned at Templeton Drive and continued toward Fort Street and into a Runza restaurant's drive-through exit, proceeding out the entrance.

At that moment, Norment's vehicle was caught in heavy traffic on Fort Street. Long then jumped out of his vehicle and began firing toward Norment's vehicle. He fired 14 shots before he jumped back into the vehicle. Norment died from a gunshot wound to the head.

Claiming that the vehicle had overheated, Nelson stopped at 56th Street and Camden Avenue. The four occupants left the vehicle. Moss ran one way, and the other three ran toward the home of Grant's mother, Tamyra Wilson. Long was carrying the gun but dropped it along the way. It was later discovered in the bushes behind a house located on Fort Street.

The three men told Wilson that their vehicle had broken down. When the police subsequently arrived, the men were arrested. Long was interviewed at the police station and initially denied being at the scene.

The police found two spent shell casings and a semiautomatic handgun on the floor of Norment's vehicle. A gunpowder test showed powder on Norment's hands.

At trial, Moss testified that Long had stated he was going to "get" the South Family gang. Moss thought that when the group left the hospital, they were planning to buy orange clothing so they could blend in with South Family gang members.

Nelson and Grant denied that there was talk of revenge. Nelson said he heard shots from Norment's vehicle before Long got out of his vehicle. Grant stated that he saw Norment fire his gun before Long returned fire.

Long testified that Norment pointed a gun at him and that he felt like he was about to lose his life. He said everything happened quickly, and it seemed as if he fired only six bullets.

Long also stated that he did not get along well with Moss, and on cross-examination, Long admitted to writing a letter to his brother Darnell Long (Darnell) in which he instructed Darnell to call Moss. Long's objection to the introduction of the contents of the letter was overruled. Over the renewed objection of his attorney, Long admitted that he had asked Darnell to get Moss to drink an alcoholic beverage before trial so Moss would not be

able to testify. Long claimed that Moss lied about everything
and that Moss was upset with Long because of Long's prior
involvement with Moss' girl friend.

The jury found Long guilty of first degree murder and use of
a weapon to commit a felony. Long's motion for new trial was
overruled, and the district court sentenced him to life imprison-
ment on the first degree murder charge and 5 to 10 years' impris-
onment on the use of a weapon to commit a felony charge, the
sentences to be served consecutively. Long timely appealed.

## ASSIGNMENTS OF ERROR

Long assigns as error that trial counsel provided ineffective
assistance by failing to timely object to the composition of the
jury based on *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712,
90 L. Ed. 2d 69 (1986). Long asserts that the district court erred
in overruling his motion in limine and in permitting cross-
examination of Long concerning a letter written by him. Long
also claims there was insufficient evidence to sustain a verdict
of guilty beyond a reasonable doubt.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

Long claims that his trial counsel was ineffective because
counsel failed to raise a *Batson* challenge prior to the impanel-
ing of the jury. After the jury was sworn, Long's trial counsel
made a *Batson* challenge as to two members of the jury panel.
Without conducting an evidentiary hearing, the district court
overruled the motion because the jury had been sworn and the
panel excused.

Following the jury verdict and in the absence of the trial judge,
the State attempted to make a record in the presence of Long,
Long's counsel, and the court reporter as to the State's race-
neutral reasons for dismissing the two jurors. The State claimed
that it had dismissed one of the jurors because the juror's nephew
had been shot in the head in a drive-by shooting and the person
responsible was released on a technicality. The juror's brother had
worked with gangs and was acquainted with defense counsel.

The second juror was stricken because he lived in the Crips'
territory, and Long was affiliated with the Crips. The juror was

employed by an organization that worked with gang members. He had had two brothers killed in Kansas City and said he was upset with the prosecution for not notifying him of the trial. He had a brother who was a sheriff's deputy, who he felt was overzealous. This juror also worked for a watchdog organization that observed police actions, and he reported that he had been attacked by a police officer. The State also claimed that this juror sat with his arms crossed during the prosecution's questioning but not when the defense was speaking.

In this court, Long filed a motion to strike this evidence from the record, and we overruled the motion without prejudice. We now conclude that this evidence is not properly a part of the record and that, therefore, it should be stricken from the bill of exceptions.

■ The procedure for preparation of a bill of exceptions is regulated by the rules of practice prescribed by this court. *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996). Neb. Ct. R. of Prac. 5A(2) (rev. 2000) states in relevant part:

> Upon the request of the court or of any party, either through counsel or pro se, the official court reporter shall make a verbatim record of anything and everything said or done by anyone in the course of trial or *any other proceeding*, including, but not limited to, any pretrial matters; the voir dire examination; opening statements; arguments, including arguments on objections; any motion, comment, or statement made by the court in the presence and hearing of a panel of potential jurors or the trial jury; and any objection to the court's proposed instructions or to instructions tendered by any party, together with the court's rulings thereon, and any posttrial proceeding.

(Emphasis supplied.)

According to Black's Law Dictionary 1221 (7th ed. 1999), a "proceeding" is defined as "1. [t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." (Emphasis omitted.) What occurred outside the presence of the trial judge was not a proceeding in the course of the trial, and therefore, it should not be included in the bill of exceptions. The fact that it was recorded by a court reporter does not make it a proceeding.

The recording by the court reporter establishes only that the transcription is an accurate recording of what occurred.

The defendant must make a timely *Batson* challenge, or the State may waive the timeliness of the objection. See *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). If the State waives the timeliness of the challenge, the parties must make an evidentiary record before the court prior to the time the evidence is presented to the jury.

In *State v. Nelson*, 189 Neb. 144, 201 N.W.2d 248 (1972), we stated that a defendant should not be allowed to speculate on the verdict and then challenge the selection of the panel after the verdict. The same rationale applies to the State. The State cannot refuse to waive the timeliness of Long's *Batson* challenge and then, after the verdict, attempt to establish that it was justified in striking the jurors in question. Therefore, we will not consider the information that was presented after the jury verdict.

We next address the claim of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Billups*, 263 Neb. 511, 641 N.W.2d 71 (2002). In order to establish whether a defendant was denied effective assistance of counsel, he or she must ordinarily demonstrate that counsel was deficient; that is, counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. Moreover, the defendant must make a showing that he or she was prejudiced by the actions or inactions of his or her counsel; that is, the defendant must demonstrate with reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002).

The question is whether Long's trial counsel was deficient in failing to make a *Batson* challenge prior to impaneling the jury. In *Myers*, 258 Neb. at 306, 603 N.W.2d at 385, we stated:

> In *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993), *questioned on other grounds, State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995), we held that an attack

on the use of peremptory challenges on *Batson* grounds must be made prior to the jury's being sworn. We reasoned that in Neb. Rev. Stat. § 25-1601.03(4) (Reissue 1995), the Legislature provided that one of the purposes of chapter 25, article 16, is to ensure that no citizen is excluded from jury duty because of discrimination based upon race, color, religion, sex, national origin, or economic status. Neb. Rev. Stat. § 25-1637(1) (Reissue 1995) provides that a motion for relief based on the ground of substantial failure to comply with chapter 25, article 16, must be made before the jury is sworn to try the case. Thus, we concluded that a defendant's objection to the use of peremptory strikes on *Batson* grounds should also be made prior to the swearing in of the jury or before any objections are waived.

In failing to make a timely *Batson* challenge, Long's trial counsel failed to preserve the issue of whether the State used improper peremptory strikes. However, this does not automatically mean that trial counsel was deficient for failing to make a *Batson* challenge prior to the impaneling of the jury. Counsel's reasons for failing to make a *Batson* challenge would need to be examined.

■ Determining under what circumstances an attorney would be deficient in failing to make such a challenge is difficult. However, such determination becomes unnecessary if Long was not prejudiced by his counsel's failure to make a timely objection. The two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, may be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed. *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001).

In *Ex Parte Yelder*, 575 So. 2d 137 (Ala. 1991), *cert. denied* 502 U.S. 898, 112 S. Ct. 273, 116 L. Ed. 2d 225, the court determined that prejudice could be presumed when counsel failed to make a *Batson* objection. It reasoned that "[i]f an outcome-determinative test is used, then no black appellant could prove prejudice unless he relied on the very assumption that *Batson* condemns." *Ex Parte Yelder*, 575 So. 2d at 139.

■ However, in *Davidson v. Gengler*, 852 F. Supp. 782 (W.D. Wis. 1994), the court noted that unlike the other circumstances in which prejudice is presumed, the failure to raise a *Batson*

objection did not suggest such a high probability of prejudice. When a timely *Batson* objection is made, a trial court is required to inquire into the reasons behind the peremptory strike. Assuming prejudice would create the unwarranted presumption that all *Batson* objections have merit. The court stated that a defense lawyer could fail to make a *Batson* challenge knowing that he had automatically secured grounds for a new trial for his client should the trial result in a guilty verdict. The court stated that the inquiry into whether prejudice exists depends upon whether there exists a reasonable probability that the makeup of the jury would have been different.

■ A claim of ineffective assistance of counsel need not necessarily be dismissed merely because it is made on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001). We conclude that the record before us is not sufficient for us to determine whether counsel's performance was deficient or whether Long was prejudiced by counsel's failure to make a *Batson* challenge. For that reason, we decline to address Long's ineffective assistance of counsel claim.

## MOTION IN LIMINE

Long alleges that the district court abused its discretion in overruling his motion in limine and thereby allowing the State to cross-examine him about the contents of the letter he wrote to his brother. Long had been advised by the court that if he testified and the motion in limine was overruled, he would be cross-examined regarding the contents of the letter. Long's attorney objected to admission of the letter on the bases that it was not relevant and that the probative value was outweighed by the prejudicial value. The motion in limine was overruled. Over objection, the State was permitted to cross-examine Long about the letter. The State never offered the letter as an exhibit; therefore, it is not part of the record. Although the jury requested to see the letter, it was not shown to them.

Long admitted that he wrote the letter to his brother Darnell and that the letter asked Darnell to pick up Moss on the morning of the trial and get him to drink an alcoholic beverage so that

Moss would be unable to testify. Long claimed that he did not want Moss to come to court and "lie on me like he always do."

Long claims the letter is relevant only if he was charged with obstruction of justice or witness tampering. He claims that use of the letter created an inference that he was a bad person and that the resulting prejudice was not harmless.

■ The State argues that the letter was relevant as to Long's credibility and to show that he was aware of his own guilt. In *State v. DeGroot*, 230 Neb. 101, 430 N.W.2d 290 (1988), the defendant sent a letter to a witness asking the witness to testify falsely about an alibi. The witness testified he would have been lying if he had testified as the defendant had requested. We found no abuse of discretion in the trial court's finding that the evidence was relevant. The State may properly argue and introduce evidence relating to a defendant's attempt to suppress evidence or otherwise avoid a fair adjudication of a dispute. *Id.*

In this case, Long asked his brother to take action so that Moss could not testify against him. The evidence was relevant to show Long's attempt to suppress evidence or otherwise avoid a fair adjudication of his guilt. See *id.*

■ Neb. Rev. Stat. § 27-403 (Reissue 1995) permits the trial court to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). However, the fact that evidence is prejudicial is not enough to require exclusion, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party. It is only the evidence that has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under § 27-403. *State v. Decker, supra.* The trial court must balance the probative value of the evidence against the prejudicial factors listed in § 27-403, and an appellate court will uphold the trial court's decision in this regard in the absence of an abuse of discretion. *State v. Decker, supra.*

■ Generally, evidence of the attempt of third persons to suppress testimony is inadmissible against a defendant where the effort did not occur in his presence. However, if the defendant has authorized the attempt of the third person to suppress testimony, evidence of such conduct is admissible

against the defendant. *State v. Clausen*, 247 Neb. 309, 527 N.W.2d 609 (1995).

We conclude that the district court did not abuse its discretion in overruling Long's motion in limine and allowing cross-examination of Long concerning the letter.

### INSUFFICIENT EVIDENCE

Long asserts that there was insufficient evidence to support a finding of guilt beyond a reasonable doubt. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

Long's assertion that Norment pointed a gun toward the occupants of Long's vehicle when the parties were at 72d Street and Military Avenue is supported by the evidence. However, Long left that threatening situation unharmed, and the State offered ample evidence from which a jury could determine that Long did not act in self-defense.

When Norment's vehicle was stopped in traffic, Long left his vehicle and fired 14 shots. Several witnesses testified that the first shots they heard came from the direction in which Long was standing. Long, Grant, and Nelson were the only witnesses who testified that Norment was the first to fire. There was also testimony that Long wanted revenge for the shooting of his brother Roland.

Whether Long was acting in self-defense was a question of fact for the jury to resolve. An appellate court does not resolve conflicts in the evidence. Accordingly, we find that the evidence was sufficient to sustain the convictions.

### CONCLUSION

We decline to address Long's first assignment of error because a sufficient record is not present. Long has failed to show that the remaining assignments of error have merit. We therefore affirm the judgments of conviction and the sentences imposed.

AFFIRMED.