STATE OF NEBRASKA, APPELLEE, V.
GARY S. MUSE, APPELLANT.
721 N.W.2d 661

Filed September 12, 2006.    No. A-05-947.

Stefanie A. Martinez and James Walter Crampton for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

IRWIN, MOORE, and CASSEL, Judges.

PER CURIAM.

## I. INTRODUCTION

Gary S. Muse appeals his convictions and sentences on a number of criminal charges. Muse asserts on appeal that the record does not indicate the second amended information, upon which trial proceeded, was ever properly filed and that the trial court erred in granting a motion in limine, in admitting certain evidence, in accepting the verdict, and in finding Muse to be a habitual criminal. We find no merit to these assertions, and we affirm.

## II. BACKGROUND

On May 16, 2005, Muse was arraigned on an amended information. Although the amended information does not appear in the transcript, the arraignment indicates that the amended information charged, and Muse was arraigned on, one count of first degree sexual assault, two counts of robbery, and a charge of being a habitual criminal. Muse was also arraigned on three counts of use of a deadly weapon in the commission of a felony, although, as noted below, the three use counts were apparently not actually included in the amended information. Muse pled not guilty to all charges.

On May 23, 2005, the parties appeared before the district court for trial. The State requested leave to file a second amended information to add three counts of use of a deadly weapon in the

commission of a felony. According to counsel for the State, "[t]he original information had the [use counts] on it." "For some reason," he explained, "they didn't get [included] on [the amended information] and for some ungodly reason I didn't catch it until this weekend when I was going over the information because this is obviously a use case." Muse objected to the request for leave to file a second amended information, indicated that he was ready to proceed with jury selection, and asked the court to deny the request.

At that point, the court asked Muse's counsel if she was "aware the allegation in this case is use of a knife," to which query Muse's counsel responded, "Yes." The court expressed its displeasure with the State's amending "at the last minute" but found, "I do believe there's no notice of [sic] surprise and the knife was involved and the state is entitled to amend and [Muse] is entitled to 24 hours' notice."

The record does not indicate that Muse was served with a copy of the second amended information at this time, and the second amended information was not read aloud in court. The court, however, immediately arraigned Muse on the three counts of use of a deadly weapon in the commission of a felony. The court asked Muse if he "wish[ed] to enter a plea [that day] with respect to those three charges," and Muse responded, "Yes, not guilty."

The court asked counsel for the State, "Do you have a copy of the [second] amended information?" Counsel for the State responded, "This was the original I was going to file." The court then indicated to counsel for the State, "Probably ought to be just left with me and I'll put a note on it to file it." The case proceeded to trial on May 24 through 26, 2005, and the jury returned a verdict on May 26 finding Muse guilty.

On appeal, the transcript to this court, which transcript is duly certified by a deputy clerk of the district court at its conclusion, begins with a recital of the district court's assigned judge, judicial district, county, location, and term, followed by the further recital:

> BE IT REMEMBERED, that in a certain cause lately pending in the District Court of Douglas County, State of Nebraska entitled: State of Nebraska against Gary S. Muse, appearing on Criminal Docket 165 Number 259 there was

filed in the office of the Clerk of said Court on the 23rd day of May, 2005, a certain Information, which said Information is in the words and following, to-wit:

SECOND AMENDED INFORMATION

The transcript then continues with photocopies of the filings in the district court, including a copy of the second amended information.

The notation of filing on the face of the second amended information does not appear in the frequently observed form of a file stamp. The first page of the second amended information represents a summary or title page and, except as we note below, appears to have been typed by the State. The upper two-thirds of the page includes the case number, the case caption, the title of the document, a summary of the charges, and a list of witnesses. That information is separated from the bottom one-third of the page by a short line, and beneath that line is an area for filing information. In the lower area appear the words "FILED: May 23, 2005," and immediately below those words appears a signature block stating the proper name and abbreviated title of the district court clerk followed below by the word "By:" and a signature line. Under the signature line appears the word "Deputy." Beneath the signature block, the document provides spaces for designating the "Journal" and "Page" at which the second amended information was recorded. The signature line bears a signature from a deputy clerk of the district court; however, the journal and page designations remain blank. Immediately to the right of the deputy clerk's signature, there appears an inexplicable stamp that indicates, "MADE MAY 26 2005."

The last page of the second amended information includes three certificates. The first is a certificate indicating that the contents of the second amended information "are true to the best of my knowledge and belief" and is signed by counsel for the State. That certificate is notarized by a deputy clerk of the court and indicates that the second amended information was sworn to before the deputy clerk on May 23, 2005. The second is a certificate indicating that the second amended information "is a full and true copy of the information in [this] case" and includes blanks to be filled in to designate the case caption, the date, and the signature of a deputy clerk of the court. None of the blanks

in this certificate are filled in. The third is a certificate added to the page by way of a stamp, indicating that "[a] certified copy of the information was delivered or mailed to [Muse] or counsel of record . . . ." This certificate indicates that a certified copy of the second amended information was not served on Muse until May 26, and it includes a signature of a deputy clerk of the court.

On July 6, 2005, Muse appeared for sentencing. At that time, Muse's counsel asked the court to note that he had filed a "motion to arrest judgment"; he argued that the district court lacked jurisdiction because the second amended information was not properly filed with the clerk of the court prior to the verdict's being rendered. The State argued that "[t]he fact that the clerk's office didn't put [its] stamp on [the second amended information]" on May 23, when it was allegedly filed, "does not render anything that [the] Court did ineffective or not valid."

On July 7, 2005, the court filed an order sentencing Muse. The court sentenced Muse to 20 to 30 years' imprisonment for first degree sexual assault, 10 to 20 years' imprisonment for each of the two robbery convictions, and 10 to 20 years' imprisonment for each of the three convictions of use of a deadly weapon in the commission of a felony. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Muse has assigned eight errors on appeal, which we consolidate for discussion to five. First, Muse asserts that the trial court erred in proceeding to trial and convicting him upon a second amended information that the record does not establish was ever properly filed. Second, Muse asserts that the court erred in granting a motion in limine. Third, Muse asserts that the court erred in admitting certain evidence. Fourth, Muse asserts that the court erred in accepting the jury's verdict. Fifth, Muse asserts that the court erred in finding Muse to be a habitual criminal.

## IV. ANALYSIS

### 1. JURISDICTION OF DISTRICT COURT

The initial issue presented in this appeal is whether Muse's convictions and sentences can be sustained based on the record

presented. Muse argues that the second amended information, upon which trial proceeded, was never properly filed. The State argues that the second amended information was properly filed. We conclude that the record presented fails to establish the second amended information was not properly filed and that accordingly, the district court had jurisdiction to proceed with trial, conviction, and sentencing of Muse.

We begin by observing that in the introduction to the transcript, the lower court certifies that the second amended information was filed on May 23, 2005. The record presented on appeal also provides a copy of the second amended information to further prove its content and filing. The document shows that it was subscribed and sworn to before a deputy clerk of the district court on May 23. The face of the document shows a notation that the document was "FILED," followed by the purported date of filing, also May 23, 2005, and the signature of a deputy clerk acting in the name of the district court clerk, memorializing that the document was thus filed, albeit without using a file stamp.

When the parties appeared in court, the State was seeking leave to file the second amended information, indicating that such had not yet been done at that time. At the conclusion of the day's proceedings, the court indicated that it would take the second amended information from counsel for the State and "put a note on it to file it." On the second amended information's face, the deputy clerk's notation of filing states that such action occurred on May 23, 2005.

Neb. Rev. Stat. § 25-2205 (Reissue 1995) states that "[i]t is the duty of the clerk of each of the courts to file together and carefully preserve in his [or her] office all papers delivered to him [or her] for that purpose in every action or special proceeding." Neb. Rev. Stat. § 25-2206 (Reissue 1995) requires, in relevant part, that "[t]he clerk of the court shall endorse upon every paper filed with him [or her] the day of filing it . . . ."

The duty imposed by § 25-2206 upon the clerk requires that officer to "endorse" the day of filing upon each document. However, except with regard to a final judgment, the parties have not cited, nor have we found, any statute that requires the "endorse[ment]" to be accomplished using a stamp. See *id*. We

recognize that Neb. Rev. Stat. § 25-1301(3) (Cum. Supp. 2004) requires the clerk to affix a file stamp upon a judgment, decree, or final order as part of the "entry" of such judgment, decree, or final order. While use of a file stamp is an efficient and desirable means to making the endorsement required by § 25-2206, no statute requires use of a file stamp to make the required endorsement upon an information filed in a criminal case. Thus, by the deputy clerk's endorsement, the second amended information itself attests to its filing on May 23, 2005. It makes no difference in our analysis that some other person initially places the date of filing upon the document, so long as it appears that the filing officer has adopted that date.

It has long been held that in the absence of evidence to the contrary, it may be presumed that public officers faithfully performed their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is presumed. See, *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001); *Ludwig v. Board of County Commissioners*, 170 Neb. 600, 103 N.W.2d 838 (1960). See, also, e.g., *Sherard v. State*, 244 Neb. 743, 509 N.W.2d 194 (1993). Such presumptions are applied to the official acts of the clerks of the district courts. *State v. Hess, supra*. See, e.g., *Knaak v. Brown*, 115 Neb. 260, 212 N.W. 431 (1927). Because the clerk of the district court is required by law to file and endorse the date of filing of all documents filed in the court, the timely filing of such documents is an official act to which the presumption of regularity attaches. *State v. Hess, supra*.

In this case, Muse argues that the record does not indicate that the second amended information, upon which trial proceeded, was ever filed. In this regard, Muse relies primarily upon the absence of a file stamp on the second amended information. While the blanks were not filled in concerning the journal or page at which the second amended information was recorded, we observe that no statute requires the journal and page of recording to be endorsed on the document. Neb. Rev. Stat. § 29-1604 (Reissue 1995) generally applies the laws concerning prosecution upon indictments to prosecutions and proceedings upon informations. Neb. Rev. Stat. § 29-1418(1) (Reissue 1995) requires the court clerk to "endorse" upon an indictment

the "day of [its] filing" and requires the clerk to "enter each case upon the appearance docket, and also upon the trial docket of the term." These specific requirements are wholly consistent with the general requirement of § 25-2206. No statute requires that the location in the appearance docket where that notation is made be endorsed upon the filed document. In other words, while the clerk must record the filing of the information in the appearance docket, the clerk is not required to endorse the information with the journal and page of the appearance docket. Similarly, the typed certificate indicating that the second amended information is a true and accurate copy of the filed document was not completed, but no statute requires any such certificate. While it is apparent, from the discussion at the time the State sought leave to file a second amended information, that the second amended information was being left with the court to "put a note on it to file it," the second amended information bears the signature of a deputy clerk of the district court immediately below a typed indication that the information was filed on "May 23, 2005."

The deputy clerk's signature on the second amended information and the typed date of May 23, 2005, are presumed to be correct until the contrary is shown. See *State v. Hess, supra.* Thus, we must presume, in the absence of affirmative evidence to the contrary, that the deputy clerk performed her duty and endorsed the second amended information with the date it was in fact presented to her for filing—presumably by adopting the date already typed on the instrument. See *id.*

Our approach is also consistent with the decision of the Nebraska Supreme Court in *State v. Baker,* 264 Neb. 867, 652 N.W.2d 612 (2002). In that case, the record indicated that on April 30, 1999, before the clerk of the district court, the county attorney subscribed and swore to an information charging the defendant. The information, however, was not file stamped until October 5. The defendant had pled not guilty on October 4. On January 20, 2000, the defendant filed a motion to discharge on speedy trial grounds which was denied by the district court. The district court found that the speedy trial period begins to run when an information is filed and found that the information at issue was not filed until it was file stamped on October 5, 1999.

On appeal, this court affirmed the district court's denial of the motion to discharge. *Id.* See, also, *State v. Baker*, No. A-00-177, 2001 WL 221557 (Neb. App. Feb. 6, 2001) (not designated for permanent publication). This court concluded that the speedy trial period did not begin to run until the information was file stamped on October 5, 1999. *Id.* The Nebraska Supreme Court dismissed a petition for further review as having been improvidently granted and, in a later appeal, held that this court's holding concerning the filing of the information had become the law of the case. *Id.*

The critical determination in our opinion in that case was our refusal to allow, for purposes of the speedy trial statute, the date of subscribing and swearing to the information to contradict the clerk's endorsement of the date of filing, which endorsement was accomplished by use of a file stamp. Neb. Rev. Stat. § 29-1207(2) (Reissue 1995) prescribes that the 6-month speedy trial period commences to run "from the date the indictment is returned or the information [is] filed." The statute does not refer to or require the use of a file stamp. In *Baker*, the date of filing was proven by the clerk's endorsement in the form of a file stamp bearing the date of October 5, 1999. In the case before us, the date of filing is proven by the deputy clerk's endorsement of a typed date by her signature. Thus, consistently with *Baker*, we view the endorsement date, rather than the date of subscribing and swearing, as controlling. In the instant case, unlike in *Baker*, those dates are the same. We recognize that the instant case presents no speedy trial issue; rather, we simply point out that our reliance upon the deputy clerk's endorsement of the filing date in the case before us does not conflict with the analysis in *Baker*. We find Muse's assertions of error concerning the filing of the second amended information to be without merit.

### 2. MOTION IN LIMINE

Muse asserts that the district court erred in sustaining the State's motion in limine to preclude testimony concerning a pending felony drug charge against one of the victims and a police search of the victims' residence conducted approximately 2 weeks prior to the incidents in the present case. Muse argues that he was prevented from presenting his "theory of the

defense"—"a drug deal gone bad." Brief for appellant at 9. We find no merit to Muse's assertions.

Although the court prevented Muse from presenting evidence on the matter, the record indicates that the two victims were the subject of an Omaha Police Department drug raid "a couple weeks prior" to the incident in this case, in which raid "$9,000 in cash and drugs were seized." At the time of trial in the present case, the male victim was apparently facing a pending felony drug charge as a result of the raid.

Prior to trial in the present case, the State made an oral motion in limine seeking to prevent Muse from inquiring about the male victim's pending felony charge and the prior drug raid on the victims' home. The State argued that the pending felony charge and the prior drug raid "somewhat [relate] to this case" and noted to the court, "When [Muse and his codefendants in the present] case came to the house, they demanded money, valuables, kept asking where's it at, where's it at. And we could assume that [the drugs and money were] what they're talking about." The State argued that Muse should be prevented from inquiring about the pending felony charge and the prior raid

> because [they] ha[ve] absolutely nothing to do with the facts of this particular case, in that if that was the motive for them coming over there, Your Honor, that has nothing to do with any of the elements. It has nothing to do with proving this case beyond a reasonable doubt. And it's prejudicial.

The court granted the motion in limine concerning the pending felony charge. We find no error in the ruling on this portion of the State's motion in limine.

Concerning the prior drug raid, Muse's counsel argued that the evidence was relevant "to the motive and intent" and that it "certainly could be impeachment material." The State argued that the evidence could not be impeachment material because "[i]mpeachment is when you're impeaching somebody's testimony, prior testimony, memory, knowledge of the event." The court reserved ruling concerning evidence of the prior drug raid and indicated that it would "make a decision at the time" and "[w]ait and see . . . whether [it] deem[ed] it relevant at the time." In effect, the court overruled that part of the State's motion

in limine, and because this part of the ruling was favorable to Muse, it cannot now be asserted as error. We therefore turn to Muse's arguments regarding exclusion of testimony.

During the trial, the male victim testified as a witness for the State. He described in detail what happened in the present case and identified Muse. During cross-examination, Muse's counsel questioned the male victim as follows:

> Q. Okay. And you relate to the [police] officers that the suspects were asking where are the drugs, where the money was; correct?
>
> A. Yes.
>
> Q. And you told the officers then that you did not know what [the suspects] were talking about; is that correct?
>
> A. Yes.
>
> Q. And that wasn't entirely truthful; was it?

At that point, the State objected and, at sidebar, argued, "Now we're getting into the area of the motion in limine when the police were there before talking about drugs and money. There's no relevancy to this line of questioning and I'd ask that we have a ruling on our motion in limine to keep that material out." Muse's counsel argued that if the court continued to allow this line of questioning, the male victim was "going to admit that he lied to the officers about being truthful with them about drugs and money and everything at the house" and that "it goes directly to his credibility." The court then inquired, "How does it go to his credibility? Where is it that you're saying he's been lying?" Muse's counsel responded that if the court continued to allow the questioning, it was "going to come out that [when] the officers asked [the male victim] if he knew any reason that people would be looking for drugs or money there, he said no." Counsel continued:

> And then eventually when pressed with information regarding the fact that his house had been raided a couple weeks prior and that $9,000 in cash and drugs were seized, he then came clean. He admitted lying to [the officers] at first. And that's directly related to his credibility. He's lying to [police] officers.

The State argued, "That has nothing, absolutely nothing to do with what we're doing here . . . it's not relevant and [is]

collateral." Muse's counsel responded, "I think anything involving his proclivity to lie to [police] officers affects his credibility." The court sustained the objection and indicated, "If it was directly in line with respect to some matter pertaining to this case, I'd let you go ahead. But it's highly prejudicial and it's something that occurred before."

Muse's counsel's next question of the male victim was "Sir, you're currently facing criminal charges that have been brought by [the county attorney's] office?" The State immediately objected. The State, in sidebar, argued, "[D]efense counsel intentionally violated [the court's] ruling on the motion in limine regarding pending charges and the state is contemplating moving for a mistrial. That was totally improper and inflammatory in front of the jury." Muse's counsel argued that the question "was a very general question" and explained:

> I was trying to get at the fact that [the male victim] might have motivation, just like any other state's witness that has charges pending, to explore whether or not they're going to be questioning some kind of deal. I kept it general for a very specific reason not to violate the order.

The court overruled the motion for mistrial, instructed the jury to disregard the question, and indicated, "[The question] is in violation of the motion in limine, so I'm going to ask [Muse's counsel] not to [ask] it again."

In criminal cases, a trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. See *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002). Additionally, the trial court is permitted to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice; the fact that evidence is prejudicial is not enough to merit exclusion, and relevant evidence should be excluded only if it has a tendency to suggest a decision on an improper basis that is unfairly prejudicial. See, *id.*; Neb. Rev. Stat. § 27-403 (Reissue 1995). In a jury trial, the credibility of witnesses is an issue to be resolved by the jury, not by the trial court. See *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

Muse's arguments at trial were substantially in conformity with his arguments on appeal. Muse asserts the following on appeal:

[T]he preclusion of the evidence left the jury with a completely distorted impression of the incident and the motives of the victims and [Muse] and the impression of the condition of the residence which was in total disarray from the [previous police search] but photographic evidence was admitted which tended to show that [Muse] had caused the disarray. [Muse] argued that his defense of a drug deal gone bad was prevented by the order in limine. Muse asserts that the trial court denied him his right to a fair trial and violated his constitutional rights in preventing him from presenting his theory of the defense.

Brief for appellant at 9.

We find no abuse of discretion by the district court in excluding this testimony. Muse has not presented any authority, nor are we aware of any, which would indicate that Muse's motive for committing these crimes—a "drug deal gone bad"—would provide any kind of defense to any of the charges. Muse did not assert that this was a case of mistaken identity, but, rather, indicated in arguments to the trial court and this court that his theory of defense was that the entire incident was part of a drug deal. The district court did not abuse its discretion in precluding the testimony.

Although credibility of witnesses is always an issue, and although this evidence was relevant to the male victim's credibility, we also do not find the district court's exclusion of the evidence to be reversible error in this regard. The record in this case contained substantial evidence implicating Muse in these crimes. Not only the male victim's testimony, set forth above and objected to, but also the female victim's testimony, expert DNA evidence, and the testimony of a codefendant who had driven the "getaway" car, all demonstrated Muse's guilt. As such, any error in excluding this evidence was harmless beyond a reasonable doubt. See *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992) (improper admission of evidence is harmless error where evidence overwhelmingly supports conviction). This assignment of error is without merit.

### 3. ADMISSION OF EVIDENCE

Muse next assigns as error that the district court "abused its discretion in receiving irrelevant and inflammatory photographic

evidence of knives which were not used in a crime." Muse argues that one photograph received by the district court was "prejudicial" and therefore should not have been received. Brief for appellant at 26. We find no merit to this argument.

The photograph at issue depicts a table in the victims' residence on which rest four knives. It is not clear from the testimony at trial whether any of the four knives are alleged to be the knives used by Muse and the other suspect in perpetrating the crimes. Muse's objections to the photograph at trial were that the photograph was "cumulative" and "prejudicial."

On appeal, Muse argues that "[n]o testimony related the knives to any element of the crimes alleged." *Id.* at 25. Additionally, Muse urges this court to construe his "prejudice" objection as a "relevance and materiality" objection. *Id.* at 26. The Nebraska Supreme Court has held that to preserve a claimed error in admission of evidence, a litigant must make a timely objection, which specifies the ground of the objection to the offered evidence. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). Further, on appeal, the defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact. *State v. Bray*, 243 Neb. 886, 503 N.W.2d 221 (1993).

In this case, Muse did not make any objection at trial concerning the foundation, relevance, or materiality of the photograph. Rather, Muse asserted that the photograph was cumulative, an objection he appears to have abandoned on appeal, and that the photograph was prejudicial. We conclude that Muse failed to preserve any issue concerning foundation or relevance of the photograph, and we find no merit to this assignment of error.

### 4. ACCEPTANCE OF VERDICT

Muse next asserts that the district court "erred when it accepted the verdict of eleven jurors polled and discharged the jury." We find this assignment of error to be meritless.

The record indicates that Muse asked the court to poll the jury when it returned the guilty verdicts. The court proceeded to poll the individual jurors, but for some reason, only 11 of them were initially polled. The court then accepted the verdict and found Muse guilty. Shortly thereafter, it was brought to the

attention of the court that one juror had not been polled. The court brought the 12th juror into the courtroom, polled the juror, and discharged him.

Neb. Rev. Stat. § 29-2024 (Reissue 1995) authorizes the polling of the jury "[b]efore the verdict is accepted" if requested by either party. Although Muse is correct in asserting that "[t]here is no provision that permits the court to separately poll a juror" after the verdict is accepted, brief for appellant at 25, neither is there any authority which suggests that doing so results in reversible error. In this case, the record indicates that all 12 jurors were polled and that all 12 jurors confirmed that their verdicts were "guilty" on each count, and Muse has not demonstrated any prejudice resulting from the separate polling of the 12th juror. This assignment of error is without merit.

### 5. HABITUAL CRIMINAL

Muse next asserts that the district court "erred in receiving a partially authenticated exhibit and in finding [Muse] to be an habitual criminal." We find no merit to Muse's assertions.

At the sentence enhancement hearing, the State presented, without objection, evidence of a 2002 conviction for the crime of delivery of a controlled substance, for which Muse was sentenced to 18 to 24 months' imprisonment; evidence of a 1994 conviction for the crime of possession of a firearm by a felon, for which Muse was sentenced to 15 months' to 3 years' imprisonment; and evidence of a 1984 conviction for the crimes of false imprisonment and use of a deadly weapon in the commission of a felony, for which Muse was sentenced to consecutive terms of 18 months' to 3 years' imprisonment. In addition, the State offered a " 'pen packet' " from the Department of Correctional Services which compiled all three prior convictions, photographs of Muse, and fingerprint records.

The packet contains a cover page, which summarizes what is contained in the packet, and a concluding page, which is a certification from the records manager of the Secretary of State's office. The concluding page certifies that "the (1) photograph(s), (2) fingerprint card(s), (3) commitment, and (4) discharge order attached hereto are copies of the original records of" Muse. Muse objected that the packet should not be received because

the certification refers to only one "commitment" and one "discharge order" and therefore should not be construed as covering all three commitments and all three discharge orders contained within the packet. We find the packet to be sufficiently authenticated to be admissible and find no error by the district court in receiving the exhibit. Additionally, Muse failed to object to the other three exhibits proving his prior convictions and sentences.

In addition, Muse argued to the district court, and argues in his brief to this court, that with respect to one of the prior convictions, he was sentenced to 18 to 24 months' imprisonment with credit for 147 days for time served, but the evidence does not show he was committed to prison for more than 1 year, and as a result, the conviction was not properly used for enhancement. The Nebraska Supreme Court has specifically held that actual time served is not a consideration in determining whether the terms of the enhancement statute, Neb. Rev. Stat. § 29-2221 (Reissue 1995), have been satisfied. See, *State v. Wyatt*, 234 Neb. 349, 451 N.W.2d 84 (1990); *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), *overruled on other grounds, State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990). Rather, it is the term of a defendant's prior sentences which controls the applicability of the habitual criminal penalty. See *id.*

Section 29-2221(1) provides:

Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal . . . .

The State presented evidence of three prior convictions, each of which resulted in a sentence of not less than 1 year in prison, which evidence was not objected to. Additionally, we find that the packet, which further compiled all three prior convictions, was properly authenticated. Muse's final assignment of error is without merit.

## V. CONCLUSION

We find that the record fails to establish the second amended information was not properly filed and that, accordingly, the district court had jurisdiction to proceed with trial, conviction, and

sentencing of Muse. We find no merit to any of Muse's assertions of error concerning his trial or enhancement hearing. The judgment of the district court is affirmed.

AFFIRMED.

IRWIN, Judge, dissenting.

The record presented on appeal fails to demonstrate that the operative information was ever properly filed before Muse's trial was held, and such failure creates a jurisdictional defect which makes the trial court's convictions and sentences void. Additionally, the majority's holding creates potential speedy trial problems. For those reasons, I respectfully dissent and conclude that this court should reverse.

As the majority notes, the issue presented in this appeal is whether Muse's convictions and sentences can be sustained based on the record presented. Muse argues that the second amended information, upon which trial proceeded, was never properly filed. The State argues that the second amended information was properly filed, notwithstanding the absence of any file stamp. The record presented fails to establish that the second amended information was properly filed, and accordingly, the district court was without jurisdiction to proceed with trial, conviction, and sentencing of Muse.

Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2004) provides in part:

> All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant. The prosecuting attorney shall subscribe his or her name thereto and endorse thereon the names of the witnesses known to him or her at the time of filing.

As long ago as 1925, the Nebraska Supreme Court held that failure to comply with the mandatory statutory language in the first sentence of the statute quoted above constitutes a jurisdictional defect. *Langford v. State*, 114 Neb. 207, 206 N.W. 756 (1925). In that case, the trial court ruled that the county attorney was not disqualified to file an information, but no information was actually filed in the district court. The defendant was convicted after a trial. On appeal, the Supreme Court held that the county attorney's failure to file the information pursuant to statutory language identical to that quoted above constituted a

jurisdictional defect and the court reversed the conviction and remanded the case.

In this case, Muse argues that the record does not indicate that the second amended information, upon which trial proceeded, was ever filed. As indicated above in the background section of the majority opinion, there is no file stamp on the second amended information, the blanks were not filled in concerning the journal or page at which the second amended information was allegedly filed, and the certificate indicating that the second amended information is a true and accurate copy of the document allegedly filed was never completed. It is apparent from the discussion in the trial court at the time the State sought leave to file a second amended information that the second amended information was being left with the court to "put a note on it to file it." However, it is not clear from the record presented that the second amended information was, in fact, filed. It is this absence in the record which prompts me to disagree with the majority's analysis.

The State argues that we can discern that the second amended information was properly filed because a "transcript certificate" completed by a deputy clerk of the district court states that the second amended information was filed on May 23, 2005, because the first page of the second amended information contains a typed indication that it was filed on May 23, and because the deputy clerk of the court attested to counsel for the State's subscribing and swearing to the second amended information on May 23. Brief for appellee at 27. The majority concludes that the "presumption of regularity" suggests that the information was properly filed.

The question presented to this court is whether we can determine from the record presented that the second amended information was properly filed and, if so, when. In this regard, the lack of any proper file stamp, as well as the other "blanks" left on the second amended information and not filled in by the clerk or a deputy clerk of the district court, demonstrates that the record does not indicate that the second amended information was ever properly filed.

The case *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002), is instructive. In that case, the record indicated that on

April 30, 1999, before the clerk of the district court, the county attorney subscribed and swore to an information charging the defendant. The information, however, was not file stamped until October 5. The defendant had pled not guilty on October 4. On January 20, 2000, the defendant filed a motion to discharge on speedy trial grounds which was denied by the district court. The district court found that the speedy trial period begins to run when an information is filed and found that the information at issue was not filed until it was file stamped on October 5, 1999.

On appeal, this court affirmed the district court's denial of the motion to discharge. *Id.* See, also, *State v. Baker*, No. A-00-177, 2001 WL 221557 (Neb. App. Feb. 6, 2001) (not designated for permanent publication). This court concluded that the speedy trial period did not begin to run until the information was file stamped on October 5, 1999. *Id.* The Nebraska Supreme Court dismissed a petition for further review as having been improvidently granted and, in a later appeal, held that this court's holding concerning the filing of the information had become the law of the case. *Id.*

Although there was a subsequent file stamp in *State v. Baker*, there are meaningful similarities between *State v. Baker* and the present case. In both cases, the record indicates a specific date on which the relevant information was subscribed and sworn to by the county attorney or a deputy county attorney. In both cases, the record indicates that the relevant information was not file stamped on that date. In *State v. Baker*, this court had held that the relevant information should not be considered properly filed for purposes of speedy trial calculations until it was file stamped, despite the detrimental effect such a finding had on the defendant's motion to discharge. According to the record in the present case, the second amended information has yet to be file stamped. As such, this court should conclude that the record presented on appeal does not indicate that the second amended information has yet been properly filed.

The record presented on appeal indicates that the second amended information, although subscribed and sworn to before a deputy clerk of the district court on May 23, 2005, was not file stamped on that date. When the parties appeared in court, the State was seeking leave to file the second amended information,

indicating that such had obviously not been done yet at that time. At the conclusion of the proceedings, the court indicated that it would take the second amended information from counsel for the State and "put a note on it to file it." Unfortunately, there is nothing to indicate that such was ever done. The majority's "presumption of regularity" analysis presupposes that the information was actually presented to the deputy clerk of the court for filing on May 23, such that the deputy clerk's signature can be said to constitute an endorsement on that date and such that the presumption that the deputy clerk properly filed the document on that date can attach.

The majority's analysis potentially creates significant problems for future cases involving such matters as motions to discharge on speedy trial grounds. As the case *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002), indicates, the presence of a file stamp to indicate definitively when an information was filed is necessary for courts to properly calculate the running of the speedy trial clock. Neb. Rev. Stat. § 25-2206 (Reissue 1995), relied upon by the majority in concluding that the deputy clerk of the district court's signature on the front of the information indicates compliance with statutory mandates, requires "[t]he clerk of the court [to] endorse upon every paper filed with him, *the day of filing it*; and upon every order for a provisional remedy, and upon every undertaking given under the same, *the day of its return to his office*." (Emphasis supplied.) The plain language of this statute requires the clerk of the court to take some action to indicate the date of filing, such as by file stamping the filed document. Contrary to the majority's conclusion, the signature of the deputy clerk of the district court on the front of the second amended information fails to satisfy this statutory requirement precisely *because* of the lack of a file stamp; the clerk failed to endorse *any* day because the clerk failed to provide a file stamp indicating the date of filing. The only reference to May 23, 2005, is the typing of the county attorney's office, not provided by the clerk of the court, and the only additional date stamped on the information after it left the deputy county attorney's possession in court is a stamp indicating, "MADE MAY 26 2005."

To conclude that the "presumption of regularity" is enough to indicate that the second amended information in this case was

filed on May 23, 2005, despite the lack of any file stamp or other affirmative evidence to indicate that the document has ever been properly filed, leads to the absurd result of allowing convictions on the basis of an information which, as far as we can affirmatively determine, may never have been filed and was apparently not served on Muse until the final day of a 3-day trial. We should not suggest that the important jurisdictional requirement of proper filing of the information can be satisfied on the basis of a presumption which presupposes a fact not demonstrated in our record—that the trial judge actually delivered the second amended information to the clerk on the date pretyped on the information by the county attorney's office.

The only stamps appearing on the second amended information indicate that it was "MADE MAY 26 2005" (a stamp that counsel at oral argument was unable to explain) and that a copy of the second amended information was served on Muse on May 26, 2005, which was actually the final day of a 3-day trial. There is nothing to affirmatively indicate that the information was actually presented to the clerk by the court or actually filed on May 23, prior to the commencement of trial. Because the filing of the operative information is a jurisdictional matter, see *Langford v. State*, 114 Neb. 207, 206 N.W. 756 (1925), the record presented to us fails to establish that the district court had jurisdiction to proceed with the trial or convict and sentence Muse on the charges. As such, we should reverse on the basis of the trial court's lack of jurisdiction to proceed with trial, conviction, and sentencing.