## State of Nebraska, appellee, v. Gregory M. Mucia, appellant.

___ N.W.2d ___

Filed March 31, 2015.    No. A-14-070.

1. **Criminal Law.** Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014) provides that it shall be unlawful for a person to knowingly possess any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers.

2. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

3. ____: ____: ____. The relevant question for an appellate court reviewing a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Convictions: Evidence: Appeal and Error.** A conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

5. **Criminal Law: Statutes: Legislature: Intent: Appeal and Error.** On appeal, appellate courts give penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.

6. **Criminal Law: Statutes: Words and Phrases: Appeal and Error.** Absent a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning; but an appellate court strictly construes penal statutes and does not supply missing words or sentences to make clear that which is indefinite or not there.

7. **Criminal Law: Statutes.** Ambiguities in a penal statute are resolved in the defendant's favor.

8. **Criminal Law: Intent.** Knowingly possessing child pornography, as prohibited by Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014), requires a specific intention to possess child pornography.

9. **Criminal Law: Trial: Judges.** A trial judge sitting without a jury is not required to articulate findings of fact or conclusions of law in criminal cases.

10. **Criminal Law: Trial: Judges: Presumptions.** In a jury-waived criminal trial, the trial judge is presumed to be familiar with and to have applied the proper rules of law, unless it clearly appears otherwise.

11. **Convictions: Evidence: Appeal and Error.** A conviction will be affirmed if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.

12. ____: ____: ____. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Appeal from the District Court for Lancaster County: KAREN B. FLOWERS, Judge. Affirmed.

Sean J. Brennan for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Gregory M. Mucia appeals his conviction for possession of child pornography. On appeal, Mucia asserts that the State failed to adduce sufficient evidence to show that he knowingly possessed the child pornography and challenges the court's admission of four video files into evidence. We find no merit to Mucia's assertions on appeal, and we affirm.

## II. BACKGROUND

Mucia was charged by information with violating Neb. Rev. Stat. § 28-813.01 (Cum. Supp. 2014), which makes it "unlawful for a person to knowingly possess any visual depiction" of child pornography. The charge was based on the identification of child pornography files on Mucia's computer, discovered by a Lincoln Police Department investigator, Corey Weinmaster.

At trial, Mucia did not dispute that evidence of child pornography was found on two of his computers. His defense was that he had not knowingly possessed child pornography; that he had not intended to access child pornography; and that if he located child pornography while searching for adult pornography, he deleted it. Mucia argued at trial that he had not knowingly possessed child pornography, because to do so would require him to have done so in a way that was not accidental or involuntary.

Weinmaster testified at trial that he investigates child pornography cases for the Lincoln Police Department, including conducting forensic examinations of computers. He testified that he uses a software program that, through the Internet, searches "IP" addresses of computers using file-sharing software and locates files that have previously been identified as potentially depicting child pornography. He testified that when the program identifies a file, the file is, at that time, actually on the hard drive of the identified computer and available for sharing through a file-sharing software program. He testified that when the software program identifies such a file, the file-sharing program being used by the identified computer also has a unique identification that can also be tracked.

According to evidence adduced at trial, Weinmaster's investigation was based on identifying persons using peer-to-peer (P2P) software, wherein users install publicly available software that facilitates the trading of digital files. Through such programs, users are able to search for digital files available on other computers and are able to select specific files to be downloaded to the user's computer. The P2P software uses an algorithm to create a "hash" value, which is a digital signature that allows an investigator to determine "with a precision that exceeds 99.9999 percent certainty" that two files are identical. The hash value of files identified as being available for sharing through P2P software can then be compared with files in a database of known child pornography to determine whether files available for sharing are child pornography.

In October 2011, Weinmaster ran the software program "and identified an IP address that had listed 10 files available for sharing" that had hash values and titles consistent with files in a law enforcement database of known child pornography files. Weinmaster then completed an affidavit for search warrant. According to his affidavit, he reviewed the information associated with four of the hash values and identified files named "r@ygold_boyandgirl 11 yo FUCK!3.26(PTHC KIDSEX}.mpg," "Best Vicky BJ & Handjob with sound (r@ygold pedo reelkiddymov underage illegal lolita daughter incest xxx ora.mpg," "! NEW ! (pthc) Veronika Nuevo 2

Nenas_all.mpg," and "(((KINGPASS))) (pthc) (dark studio) Dark Robbery.mpg."

Weinmaster reviewed the files in the law enforcement database that had the unique hash values identified with the four files. Each was a video file depicting children engaged in sexual conduct. One video involved a prepubescent female and a prepubescent male and depicted masturbation and sexual penetration; Weinmaster estimated that the children were approximately 9 to 11 years of age. One video involved a prepubescent female, approximately 9 to 11 years of age, performing oral sex on an adult male. One video involved two prepubescent females, approximately 7 to 9 years of age, and depicted penetration of one's vagina with a foreign object, as well as a female approximately 10 to 11 years of age performing oral sex on an adult male. One video involved three females, approximately 12 to 14 years of age, exposing their breasts and vaginas and rubbing their vaginas.

Copies of these four videos were offered and received, over objection, at trial. Weinmaster testified that his software program indicated that the video files had been present on Mucia's computers, but that they were no longer present on the computers after they were seized and forensically examined.

Through identification of the IP address associated with the identified files, Weinmaster was able to identify that the Internet account holder was Mucia's brother. When executing a search warrant, Weinmaster seized two computers, both from Mucia's room at the residence. Weinmaster then ran forensic examinations on both computers.

Weinmaster testified that he found evidence of a variety of files, both in and out of the "recycle bin," on one of the computers that merited further investigation. He testified that four of the files that were not in the recycle bin were video files that had been downloaded through a P2P software program and placed in a specific user account that had to be specified as the download location. He testified that he viewed the four videos and that they constituted child pornography. Portions of the four videos were played for the court. As the portions were played for the court, there was no description or indication of what was being seen by the court.

In addition to the 4 files found out of the computer's recycle bin, Weinmaster located 14 other files in the recycle bin. He testified that files in the recycle bin were still accessible and can be restored and that the recycle bin can be used as "another storage container" on the computer.

Weinmaster testified that the location of files located on the computer required a series of steps to download the P2P software program, to install it, and to set it up and specify the download location to be somewhere other than a default location. He also testified that other P2P software programs on the computers included data files that tracked activity and showed a history of files consistent with child pornography. He also testified about Internet history located on the computers showing files that had been accessed and including terms consistent with child pornography, as well as thumbnail images on the computers that fit the criteria for child pornography.

Weinmaster testified he found evidence of files being accessed on the computers that were associated with "LS models" (which Weinmaster testified was a term prevalent in child pornography) and "p-t-h-c" (another term prevalent in child pornography) and that included phrases such as "rubbing eight y-o to orgasm" and "PTHC, five-year-old Kate, dad, ecstasy, hyphen, Katie . . . getting a mouthful of my cum, dot, link." He testified that he could tell that the files were accessed and downloaded, but could not determine whether video files were watched.

On cross-examination, Weinmaster testified that Mucia had indicated that he used the P2P programs to search for pornography, but indicated that he had not been looking for child pornography. Weinmaster testified that Mucia indicated that if he saw child pornography, he deleted it. He also testified that a P2P user can conduct a batch download, highlighting a long block of items and downloading them without reading filenames first.

On cross-examination, Weinmaster testified that the four files he located which had been saved on either of the computers were the four videos of which a portion was played for the court and that everything else either was located in the recycle

bin or was indicated only through residual evidence of having been accessed at some point in time. He testified that the four videos he initially identified through hash values, leading to the search warrant and seizure of the computers, were not on the computers after he seized them. When asked to confirm that he found "no evidence of them anywhere" after seizing the computers, he acknowledged there was "[n]one."

Mucia testified in his own defense. He acknowledged installing and using P2P software on his computers to obtain music, movies, and pornography. He testified that he never intentionally obtained child pornography and never searched for child pornography. He acknowledged that he had, on occasion, obtained images or videos that he suspected were child pornography, but he testified that when this happened, he had deleted the files because he "didn't want anything to do with child pornography." He testified that he had searched for "'teen porn'" in an attempt to locate pornography involving girls that were ages 19 to 24.

Mucia testified that he had engaged in "'batch downloading'" of files, during which he downloaded a large number of files and then returned later to "see what it was."

Mucia testified that he was unaware that there was any child pornography on his computers.

On cross-examination, Mucia testified that downloaded files had to be opened to be able to see their content. He acknowledged seeing content in 2011 that he believed was child pornography. He agreed that the titles of files discovered by Weinmaster were consistent with child pornography.

On cross-examination, Mucia acknowledged that it was "possible" that he had visited a Web site related to "Preteen Models and Young Models" in September 2011, but testified that he was not "aware of" it. He testified that it was possible he had "click[ed] on a link of a link, but when — if [he] did go there, [he] would immediately get out, but [he] wasn't intending to go there."

Mucia also presented evidence from another computer forensics expert who had conducted a forensic examination of the computers in this case. The expert testified that he was often called upon to search for evidence of a user's intent. He

testified that in doing so, he looked for the overall context in which data resides, including how organized any child pornography might be, whether it is relabeled or put into subfolders and subdirectories, and whether it is saved on external drives or encrypted into hidden areas. He testified that in this case he found no signs of any organization, no encryption, and no external copies or storage.

Mucia's expert testified that "'teen porn'" is a common search term for pornography that would be age appropriate for someone Mucia's age.

Mucia's expert testified that his analysis of the computers and the evidence was consistent with Mucia's denial of having knowingly possessed child pornography. He testified that "searches for adult pornography were conducted, and in casting this large net across a body of water of unknown material . . . the unintended consequences of child pornography existed and . . . most of it had been deleted."

On cross-examination, Mucia's expert acknowledged that there was evidence of child pornography on the computers. In fact, he testified that he located two videos consistent with child pornography on one of the computers that Weinmaster had not found.

After the bench trial, the court found that the State had met its burden of proof and found Mucia guilty of knowingly possessing child pornography. The court sentenced Mucia to 3 years' probation. This appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Mucia has assigned two errors. First, he asserts that the State failed to adduce sufficient evidence to demonstrate that he "knowingly" possessed child pornography. Second, he asserts that the district court erred in receiving into evidence the four videos identified by Weinmaster but not actually found on his computers.

### IV. ANALYSIS

#### 1. Knowing Possession

[1] Mucia was charged with possession of child pornography under § 28-813.01. That statute provides that "[i]t shall be

unlawful for a person to *knowingly* possess any visual depiction of sexually explicit conduct . . . which has a child . . . as one of its participants or portrayed observers." (Emphasis supplied.)

On appeal, as at trial, Mucia does not argue that there was insufficient evidence to establish that he had possessed child pornography or that child pornography was found on his computers. Rather, he focuses his argument on asserting that the State failed to sufficiently demonstrate that his possession was knowing. He argues that "[t]he State failed to present evidence to refute Mucia's and [his expert's] testimony that Mucia received the child pornography unintentionally while conducting batch downloads of legal adult pornography and that he was not in knowing possession of it." Brief for appellant at 7.

[2-4] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Hansen*, 289 Neb. 478, 855 N.W.2d 777 (2014). See, also, *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. A conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

[5-7] On appeal, appellate courts give penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy. See *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning; but we strictly construe penal statutes and do not supply missing words or sentences to make clear that which is indefinite or not there. See *id*.

Ambiguities in a penal statute are resolved in the defendant's favor. *Id*.

We have been unable to locate any prior cases in Nebraska where either the Nebraska Supreme Court or this court have had occasion to make a determination about whether the term "knowingly" as used in § 28-813.01 requires a showing that the defendant had the specific intention of possessing child pornography or merely the general intention of possessing material that is, in fact, child pornography, and the parties have cited us to no authority on point. Nonetheless, we find that the Nebraska Supreme Court's discussion in *State v. Schuller, supra*, sheds some light on the subject.

In *State v. Schuller, supra*, a defendant was convicted in a bench trial of possession of child pornography under § 28-813.01. The Supreme Court addressed whether the term "possess" in § 28-813.01 included constructive possession, as well as actual possession, and concluded that constructive possession was included in the statute's prohibition. The evidence in that case did not create an appealable issue concerning whether the defendant had knowingly possessed the child pornography at issue, as the uncontested evidence demonstrated that the defendant had searched the Internet for child pornography, had downloaded child pornography, had watched child pornography, and had then deleted the child pornography; the defendant had engaged in this behavior several times. Thus, the Supreme Court noted that the evidence was sufficient to support finding that the defendant had knowingly possessed child pornography.

The Supreme Court addressed the defendant's argument that he had not possessed the child pornography files at issue because he had merely viewed them. In rejecting this argument, the Supreme Court distinguished the factual context of the case from a hypothetical scenario in which an office worker intentionally seeks out child pornography and views and manipulates child pornography images, and then an innocent coworker who happens to go into the office sees the images on the computer screen. The Supreme Court noted that in the hypothetical scenario, the innocent coworker would not have affirmatively sought out the images and had not had the

ability to control or manipulate them, and that therefore, the coworker would not have knowingly possessed them.

The Supreme Court concluded that the defendant in *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014), had not merely viewed the child pornography files at issue. "Instead, he repeatedly searched for, downloaded, viewed, and then deleted child pornography. He did this intentionally and with the specific purpose to do so, and he used file-sharing software to achieve his ends. This constitutes knowing possession—not mere viewing." *Id*. at 514, 843 N.W.2d at 636.

The Supreme Court also noted that if a person legally browses adult pornography and mistakenly clicks on a link leading him to a child pornography site, which he immediately closes, the person would not be guilty of knowingly possessing child pornography. *State v. Schuller, supra*. The Supreme Court noted that, even though in such a situation child pornography would be downloaded to a computer's "'cache'" folder as a temporary Internet file, the person would not have downloaded the files knowingly or constructively possessed them. *Id*. at 514, 843 N.W.2d at 636.

[8] The Supreme Court's discussion in *State v. Schuller, supra*, is illustrative and suggests that knowingly possessing child pornography, as prohibited by § 28-813.01, requires a specific intention to possess child pornography. The Supreme Court's emphasis on the defendant in that case having acted "intentionally and with the specific purpose" to locate and view child pornography is more consistent with a specific intent requirement than a general intent to possess files that, unbeknownst to the defendant, turn out to be child pornography.

We thus agree with Mucia that § 28-813.01 requires sufficient proof that he had the specific intent to possess child pornography, and not merely a general intent to download files that, unbeknownst to him, turned out to be child pornography.

In this case, the trial court did not make any specific findings about whether it was applying a specific or general intent requirement to the term "knowingly." After counsel made closing arguments, the court inquired whether Mucia's engaging in batch downloads knowing that batch downloads could

result in illegal content being retrieved would be sufficient to demonstrate knowing possession, and Mucia's counsel argued to the court that a specific intent would be required. The court then took the matter under advisement, and when the court announced its verdict, the court did not make a specific finding on the relative intent required, but it did note that it had considered the arguments of counsel and had concluded that the State met its burden of proof. The record on appeal does not include the written verdict of the court.

[9,10] A trial judge sitting without a jury is not required to articulate findings of fact or conclusions of law in criminal cases. *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992). Further, it has long been the law in Nebraska that in a jury-waived criminal trial, the trial judge is presumed to be familiar with and to have applied the proper rules of law, unless it clearly appears otherwise. See *State v. Tucker*, 278 Neb. 935, 774 N.W.2d 753 (2009); *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003); *State v. Franklin, supra*; *State v. Cowan*, 204 Neb. 708, 285 N.W.2d 113 (1979).

[11,12] In such a case, the conviction will be affirmed if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. See *State v. Keup, supra*. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Thus, the question we must resolve, in determining whether there was sufficient evidence to support the court's conviction in this bench trial, is whether the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support a conclusion that Mucia intentionally possessed child pornography.

Although we acknowledge that the amount of child pornography found on Mucia's computers was slight, we nonetheless conclude that the conviction must be affirmed. Viewed in a light most favorable to the State, the evidence adduced at trial indicated that the four videos initially identified by Weinmaster as being on Mucia's computer and available for downloading by other P2P users had been present on Mucia's

computer at one point in time, even though they were no longer present when the computers were seized. Those four videos had file names including terms such as "11 yo FUCK!," "pedo," "reelkiddymov underage illegal lolita daughter incest," and "pthc." Weinmaster testified that each was a video file depicting children engaged in sexual conduct, including prepubescent females and males engaged in masturbation and sexual penetration.

The evidence, viewed and construed most favorably to the State, indicated that four other video files were located in a specific user account, which had to be specified as a download location and would not have automatically been created through the P2P program's setup, and that the location of files found on the computers required a series of steps to download the P2P program, install it, and set it up and specify the download location.

The evidence, viewed and construed most favorably to the State, indicated that P2P software programs on the computers included data files and tracked activity showing a history of files consistent with child pornography, including temporary files and thumbnail images. The files included terms consistent with child pornography, such as "LS models" and "p-t-h-c," and included phrases such as "rubbing eight y-o to orgasm" and "PTHC, five-year-old Kate, dad, ecstasy, hyphen, Katie . . . getting a mouthful of my cum." The evidence indicated that these files were accessed and downloaded.

Although the State was unable to adduce direct evidence that Mucia intentionally sought out child pornography files and although Mucia presented evidence that he had engaged in batch downloads that might have inadvertently returned child pornography files, the evidence circumstantially supports a conclusion that Mucia knowingly possessed child pornography. The question presented on appeal is not whether it would have been reasonable for the finder of fact to have reached a different conclusion, but whether any rational finder of fact could have reached the conclusion that was reached by the trial court. Viewed in a light most favorable to the State, the circumstantial evidence supports a conclusion that child pornography files had to be selected from P2P searches to be

downloaded and some of the files were downloaded to a specific location that required specific steps by the user that a fact finder could find inconsistent with Mucia's claim of inadvertence or accidental possession.

On appeal, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Hansen*, 289 Neb. 478, 855 N.W.2d 777 (2014). See, also, *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014). The relevant question for us is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. Even though the evidence adduced in this case was such that a rational trier of fact could have accepted Mucia's assertion that his possession was only inadvertent or reckless, it was also such that a rational trier of fact could have concluded that it was knowing. Because we do not reweigh the evidence or resolve such conflicts, we find the evidence sufficient to support the conviction, and we find no merit to Mucia's assignment of error.

## 2. Admission of Videos

Mucia also asserts that the district court erred in admitting into evidence four videos. The videos were the four files initially identified by Weinmaster through the presence of hash values consistent with child pornography and which Weinmaster testified were not located on the computer after it was seized and searched.

Mucia argues on appeal that the State failed to demonstrate that the videos were true and accurate copies of any file that had actually ever been on his computers, because the only connection between the videos and his computers was the testimony regarding hash values.

The State argues on appeal that Mucia failed to preserve any objection to the admission of the video files, because although he did object to their admission into evidence, he failed to specify any grounds for the objection. See *State v. Muse*, 14 Neb. App. 13, 721 N.W.2d 661 (2006) (to preserve claimed error in admission of evidence, litigant must make timely

objection which specifies ground of objection and may not assert different ground on appeal).

In this case, Mucia's objection at trial did not specify any ground for the objection. It is not apparent from the record that his objection was based on the reliability of hash value evidence or based on asserting that the videos were not true and accurate copies of videos that have ever appeared on the computer.

Indeed, as noted above, Mucia's defense at trial—specifically indicated to the trial court before any testimony was received—was unrelated to any challenge to whether child pornography or any particular child pornography had been on Mucia's computer or possessed by him. Mucia's defense was entirely premised on challenging whether his possession was "knowing." To the extent that Mucia did not challenge the State's assertion that he actually possessed child pornography, it is hard to discern how admission of these video files could have prejudiced Mucia. Moreover, there was other evidence presenting graphic depictions of the videos that was admitted without objection; and there was substantial evidence of other child pornography on Mucia's computers that was admitted without objection.

We find no merit to Mucia's assertion that the court erred in admitting the video files. Mucia did not specify a basis for objecting to the files' admission and thus waived the right to assert the basis for objecting which was being asserted on appeal. Moreover, any error in admission would have been harmless in the context of this prosecution.

## V. CONCLUSION

We find no merit to Mucia's assignments of error, and we affirm.

Affirmed.