IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LIGHTSPIRIT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHEKINAH LIGHTSPIRIT, APPELLANT.

Filed November 8, 2016.    No. A-15-970.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

## I. INTRODUCTION

Shekinah Lightspirit appeals his convictions and sentences for first degree assault and use of a deadly weapon to commit a felony. Lightspirit's sentences were enhanced following the district court's determination that Lightspirit is a habitual criminal. On appeal, Lightspirit argues that there was insufficient evidence to support his convictions, that the district court erred in admitting an exhibit at the enhancement hearing that was not properly authenticated, that his counsel was ineffective in various respects, and that the totality of the circumstances establishes that he did not receive a fair trial. We find no merit to Lightspirit's assignments of error on appeal, and we affirm.

- 1 -

## II. BACKGROUND

The charges against Lightspirit arose from an incident occurring in the early morning hours of July 24, 2014. Matthew Perry, a homeless man, was sleeping outside his tent in a transient campsite located behind the People's City Mission in Lincoln, Nebraska. A man, later identified by numerous eyewitnesses as Lightspirit, approached Perry as he slept. Lightspirit threw a heavy object at Perry, striking him in the head. Also during the assault, Perry's collarbone was broken. Lightspirit fled the scene before police arrived.

Perry was transported to the hospital where he was diagnosed with a depressed skull fracture. Perry underwent surgery for the injury and was eventually released.

Lightspirit was arrested at Matt Talbot Kitchen later in the morning on the day of the assault. Matt Talbot Kitchen is about 30 blocks from the People's City Mission. Lightspirit agreed to a police interview in which he denied he had been near the People's City Mission or assaulted Perry that morning.

Lightspirit was charged with first degree assault. The information was later amended to add a charge of use of a deadly weapon to commit a felony and an enhancement for being a habitual criminal.

The matter proceeded to a jury trial. The State presented the testimony of numerous eyewitnesses who identified Lightspirit as the person who had injured Perry by throwing the heavy object at his head. The State also presented the testimony of numerous police officers involved in the investigation, and the doctor who performed the surgery on Perry. Lightspirit testified in his own defense, claiming he was sleeping in a park near Matt Talbot Kitchen at the time of the assault. Lightspirit testified that after he woke up, he went directly to the bathroom at Matt Talbot Kitchen, where he was arrested. The jury found Lightspirit guilty on both counts.

Following the verdict, the court held an enhancement hearing to determine whether Lightspirit was a habitual criminal as the State had alleged. The State introduced a number of exhibits at the enhancement hearing purporting to show that Lightspirit had been convicted and sentenced to more than a year in prison on four prior occasions. Following the enhancement hearing, the court found Lightspirit to be a habitual criminal and sentenced him to 15 to 25 years' imprisonment for first degree assault and 10 to 20 years' imprisonment for use of a deadly weapon to commit a felony. The court ordered that the sentences be served consecutively and awarded Lightspirit credit for 432 days served.

Lightspirit appeals. Additional facts will be discussed, as necessary, in the analysis section of this opinion.

## III. ASSIGNMENTS OF ERROR

Restated, Lightspirit argues that there was insufficient evidence to support his convictions, that the district court erred in admitting an exhibit at the enhancement hearing that was not properly authenticated, that his trial counsel was ineffective in various respects, and that the totality of the circumstances establishes that he did not receive a fair trial.

## IV. STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not

resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

A court must determine whether there is sufficient foundation evidence for the admission of physical evidence on a case-by-case basis. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. *Id.* An appellate court reviews a trial court's ruling on authentication for abuse of discretion. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). Determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law that an appellate court reviews independently of the lower court's decision. *Id.* The court reviews factual findings for clear error. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Lightspirit argues that there was insufficient evidence to support his convictions. He argues that the State's witnesses "do not corroborate each other with regard to basic information," such as who was present during the assault, whether the various eyewitnesses used substances the night before, and the exact sequence of the assault. Brief for appellant at 14-15. Lightspirit also emphasizes the lack of forensic evidence presented by the State to link him to the crime. We find no merit to this assignment of error.

In reviewing a sufficiency of the evidence claim, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

The State called Perry, the victim of the assault, as well as four other witnesses who were present on the day of the assault. Because Lightspirit's sufficiency of the evidence argument focuses on the inconsistencies between these eyewitnesses' testimonies, we will set forth the details of their versions of events.

Perry testified that in the early morning of July 24, 2014, he was sleeping near his tent behind the People's City Mission. Perry testified that he had been sharing a tent with a man named Tony Hafi. Perry testified that a person named Dakota and a person named Chris were also sleeping nearby. Perry testified that he awoke screaming around 6 a.m. because something hit his head. Perry testified that he was bleeding and disoriented, and the person attacked him again. According to Perry, he fought with the person, and the attacker then pulled out a machete and swung it around in a threatening manner. Perry testified that the person then picked up a steel ball and threw it at Perry a second time, striking him in the shoulder. Perry testified that he recognized the person who had assaulted him as Lightspirit. Perry also identified Lightspirit as the assaulter in court.

On cross-examination, Perry testified that neither a Jeffrey Jones nor a Scot Szafrajda was present on the morning of the assault. Perry also testified that no one was drinking or using drugs the night before the assault.

The State also called Hussain Hafi to testify about the assault. Hafi testified that he goes by the name Tony and was living in a tent outside the People's City Mission on July 24, 2014.

Hafi testified he was staying with Scot Szafrajda, Jeff Jones, and others. According to Hafi, on the morning of July 24, he awoke to a "ruckus and yelling" and heard Lightspirit yelling at Perry. Hafi testified that Perry got up and a fight ensued. Hafi testified that he saw Lightspirit throw a softball-sized object that hit Perry in the head. According to Hafi, he did not see Lightspirit throw the object a second time. Hafi testified that Lightspirit was also holding and swinging a machete during the assault. Hafi testified that immediately following the assault, he went towards the People's City Mission to call the police, but encountered Scot Szafrajda who informed Hafi that he had already done so.

On cross-examination, Hafi testified that on the night of July 23, the members of the campsite had smoked "K2" and marijuana, but had not consumed alcohol. Hafi testified that the people he knew as Chris, Dakota, Jeffrey, and Scot were not outside when the assault began.

The State next called Christopher Westerlund to testify. Westerlund testified that he had been camping outside the People's City Mission on July 24, 2014, and that he had been sharing a tent with a person named Dakota. Westerlund testified that Perry and Hafi were camping in a nearby tent with a person named Jeff. Westerlund testified that he was sitting in a lawn chair outside his tent around 6:10 a.m. when Lightspirit approached the campsite. Westerlund testified that he was familiar with Lightspirit from having seen him around before. Westerlund testified that Lightspirit had a metal ball in his hand and threw it at Perry's head, then again at his shoulder. Westerlund testified that Lightspirit had a machete at his side but did not swing it around.

On cross-examination, Westerlund testified that the members of the campsite had likely been drinking alcohol on the night of July 23 because he recalled seeing beer cans around the campsite the next morning. Westerlund testified that he did not believe Scot Szafrajda was in the area around the tents on the morning of the assault. Lightspirit's attorney impeached Westerlund's earlier testimony that he had seen Lightspirit throw the ball twice and Westerlund admitted that he only witnessed Lightspirit throw the ball once. Westerlund testified, however, that he was "positive" he saw Lightspirit throw the ball and strike Perry in the head.

The State's next witness was Jeffrey Jones. Jones testified that on the day of the assault, he was staying with Hafi and Perry in a tent behind the People's City Mission. Jones testified that Chris Westerlund and his friend were staying in a nearby tent. Jones testified that on the morning of July 24, he heard lots of commotion and yelling and witnessed a person running around screaming and swinging a machete. According to Jones, he did not know Lightspirit before the assault, but was able to identify him later. Jones testified that Perry was on the ground and bloody by the time Jones made it out of his tent.

On cross-examination, Jones testified that he could not recall if the residents of the camp had been drinking the night before, but that if they had, it "wasn't that much" because he recalled going to bed early. Jones testified that someone may have been sleeping in his tent that night, and it may have been a person named Scot, but he was unsure. Jones also admitted he had been convicted of theft by deception.

Finally, the State called Scot Szafrajda to testify. Szafrajda testified that he was staying inside the People's City Mission building on July 24, 2014, and therefore did not witness the attack at the nearby campsite. Szafrajda testified that that morning, he encountered Hafi on his way to the People's City Mission to report the assault. Szafrajda testified that he, rather than Hafi, ended up calling the police. According to Szafrajda, the night before the assault, he had gone down to the

campsite to drink beer with the campers. On cross-examination, Szafrajda testified that people at the campsite were also smoking K2 on the night of July 23.

The State also called numerous police employees who testified regarding the investigation. In particular, the State called Robert Citta, an identification specialist with the Lincoln Police Department. Citta testified that the investigating officers had delivered a metal ball taken from the crime scene for him to analyze. According to Citta, he examined the ball for fingerprints but was unable to obtain any prints. Citta testified that it is not unusual to find no usable prints during investigations.

The first count of which Lightspirit was convicted required that Lightspirit intentionally or knowingly caused serious bodily injury to Perry. Neb. Rev. Stat. § 28-308 (Cum. Supp. 2014). The second count required that Lightspirit have used a knife, brass or iron knuckles, or any other deadly weapon to commit the assault. Neb. Rev. Stat. § 28-1205(1)(b) (Cum. Supp. 2014).

Lightspirit does not contest the nature and extent of Perry's injuries, but focuses on the believability of the witnesses' testimonies that he was one who perpetrated the assault. In particular, Lightspirit focuses on the inconsistencies in the witnesses' testimonies regarding who was present during the assault, whether substances were consumed the night before, and the order of the events during the assault. However, Lightspirit's argument ignores that, despite these discrepancies, the State's witnesses *were* consistent in identifying Lightspirit as the person who threw a heavy object at Perry's head.

An appellate court does not reweigh the evidence or pass on the credibility of witnesses when reviewing the sufficiency of the evidence. *Hale, supra*. The jury heard the entirety of the State's testimony and apparently determined that, despite their inconsistencies on other details, the eyewitnesses were believable in identifying Lightspirit as the person who assaulted Perry with a heavy object. Viewed in the light most favorable to the prosecution, the jury could have found the essential elements of both charges beyond a reasonable doubt.

Lightspirit also points to the lack of forensic evidence tying him to the crime. Citta testified that his lab examined the metal ball but found no usable fingerprints, a common occurrence during investigations. In light of the extensive eyewitness testimony implicating Lightspirit, the lack of forensic evidence does not affect our determination that the State presented sufficient evidence by which the jury could have found Lightspirit guilty.

2. ADMISSION OF EXHIBIT AT ENHANCEMENT HEARING

Lightspirit next argues that the district court erred in admitting an exhibit, exhibit 40, at the enhancement hearing because it was not properly authenticated. Lightspirit argues that had exhibit 40 been excluded, the State would have been unable to connect him to three prior felony convictions under a different name. We find that Lightspirit failed to preserve error on this issue.

At Lightspirit's enhancement hearing, the State offered evidence of four prior convictions for which Lightspirit had been sentenced to a year or more in prison. One of the convictions listed the defendant as "Shekinah Lightspirit" but the other three named "Roland Palmer" or "Roland P. Palmer" as the defendant. To demonstrate that Palmer and Lightspirit were the same person, the State introduced exhibit 40, a so-called "pen packet" from the Nebraska Department of Correctional Services. The pen packet contained mugshots from a 22-year timespan showing

Palmer and Lightspirit to be the same person. The exhibit also contained fingerprint cards which listed the same birthdate and social security number for the names Palmer and Lightspirit.

Lightspirit's attorney objected as follows:

> Judge, I have no objection to the court - well, the court has already received Exhibit 35 [listing Lightspirit's name], and for purposes of enhancement, I have no objection on that. Exhibits 36, 37, 38, 39, those are all convictions of a person named, or the heading on them is Roland Palmer. There's no evidence that, that's Shekinah Lightspirit. I know that's alleged in the Information, it's not one in the same person. There is no evidence of a name change or anything like that, so I would object on that and, I guess, confrontation.

The State argued that Palmer was an alias for Lightspirit and that exhibit 40, the pen packet, demonstrated they were the same person. Following the State's argument, Lightspirit's attorney stated he had no further objection.

The court overruled the objection and accepted the prior convictions, along with exhibit 40, into evidence.

The record demonstrates that Lightspirit failed to preserve error on this issue because he did not object to exhibit 40's admission. While Lightspirit's attorney objected to the admission of the prior convictions under Palmer's name, he did not object to the pen packet itself. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

However, Lightspirit's failure to object at the enhancement hearing does not end our inquiry into the admissibility of exhibit 40; Lightspirit has also asserted an ineffective assistance of counsel claim in this regard. Accordingly, we turn next to Lightspirit's claims of ineffective assistance of counsel.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). The two prongs of the ineffective assistance test, deficient performance and prejudice, may be addressed in either order. *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

Because Lightspirit has different counsel in this appeal from trial counsel, he must raise any issue of ineffective assistance of trial counsel which is known to him or which is apparent from the record, or the issue will be procedurally barred on postconviction review. *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). The determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

Lightspirit argues that his trial attorney performed deficiently in failing to object to the admission of exhibit 40 at the enhancement hearing, in failing to bolster Lightspirit's alibi defense, in failing to strike biased jurors, in failing to adequately cross-examine the State's witnesses, and

in failing to question one of the investigating officers regarding his accessing police records after they were filed. We will address each of Lightspirit's arguments in turn.

(a) Admission of Exhibit at Enhancement Hearing

Lightspirit first argues that his attorney was ineffective for failing to object to the admission of exhibit 40 at the enhancement hearing. Similarly to his argument regarding the trial court's error in admitting exhibit 40, Lightspirit argues that exhibit 40 was not properly authenticated. Lightspirit reasons that, had his attorney objected, he would not have been found to be habitual criminal because there would be no evidence to connect Lightspirit to the name Roland Palmer. The State argues that the pen packet was a self-authenticating document and therefore properly admitted. For the reasons that follow, we find no merit to this assignment of error.

Nebraska's habitual criminal statutes provide for enhanced mandatory minimum and maximum sentences for a convicted defendant who "has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state . . . for terms of not less than one year." Neb. Rev. Stat. § 29-2221(1) (Reissue 2008). See, also, *State v. Hall*, 270 Neb. 669, 708 N.W.2d 209 (2005). A prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

A document is properly authenticated by evidence sufficient to support a finding that the matter in question is what its proponent claims. *State v. Jacobson*, 273 Neb. 289, 728 N.W.2d 613 (2007). A document is self-authenticating if it bears a seal purporting to be that of any state and a signature purporting to be an attestation or execution. Neb. Evid. R. 902(1), Neb. Rev. Stat. § 27-902(1) (Reissue 2008).

Exhibit 40, the pen packet linking Lightspirit to the name "Roland Palmer," contains a "Certification of Documents" on its front page. The certification states that the correction records manager certifies that the photos, commitments, discharge certification, and fingerprints contained in the packet are true and exact copies. The certification bears the notarized signature of the corrections records manager and contains the seal of the state of Nebraska.

We addressed a similar question of authentication in *State v. Muse*, 15 Neb. App. 13, 721 N.W.2d 661 (2006). In *Muse*, the State offered a pen packet into evidence during the defendant's sentencing enhancement proceeding. We noted that the pen packet included a certification from the records manager stating that the photographs, fingerprint cards, commitment, and discharge order were copies of the original. We found the pen packet to be sufficiently authenticated to be admissible and affirmed the district court's decision to receive the exhibit. See, also*, State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009) (upholding admission of pen packet in criminal enhancement proceeding and noting the packet contained the same certification as that described in *Muse, supra*).

The pen packet contained in exhibit 40 contains the same certification as those found to support authentication in *Muse, supra*, and *Epp, supra*. Furthermore, although those cases did not specify the exact basis for finding the pen packet to be admissible, we agree with the State that the pen packet meets the requirements for a self-authenticating document under Rule 902. In particular, the pen packet contains a seal purporting to be that of Nebraska and the signature of the

- 7 -

records manager attesting to the documents' accuracy. See § 27-902(1). Accordingly, we conclude that exhibit 40 was properly authenticated. Lightspirit's counsel could not have been ineffective for failing to raise an objection that would have been overruled. This assignment of error is without merit.

### (b) Alibi

Lightspirit argues that his trial counsel was ineffective for failing to file notice of an alibi defense as required by statute, for failing to identify witnesses who could have corroborated Lightspirit's testimony that he was not at the People's City Mission on the morning of the assault, for failing to introduce alibi evidence other than Lightspirit's own testimony, and for failing to present evidence of the exact time Lightspirit arrived at Matt Talbot Kitchen on the morning of the assault. The State argues that any additional alibi evidence would have been cumulative of Lightspirit's testimony and that his counsel was therefore not deficient. We find that the record is inadequate for us to address this assignment of error.

The Nebraska Supreme Court addressed a similar allegation of ineffective assistance of counsel in *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). In *Young*, the appellant, as here, had alleged on direct appeal that his attorney was ineffective for failing to call additional witnesses who could have supported his alibi defense. At trial, the attorney had called Young and three other witnesses to testify that Young was not at the scene of the crime. The Supreme Court concluded that the record was inadequate to determine if there were additional witnesses who could have testified regarding the alibi or, if so, whether such testimony would have strengthened or weakened the evidence actually presented.

Similarly here, the record does not reveal whether there were additional witnesses who could have corroborated Lightspirit's testimony that he was at Matt Talbot Kitchen at the time of the assault and if so, whether these additional witnesses would strengthen or weaken Lightspirit's alibi. Accordingly, we conclude the record is insufficient for us to adequately review this claim.

### (c) Failure to Strike Jurors

Lightspirit next argues that his trial counsel was ineffective for failing to strike "several prospective jurors [who] appeared to be biased toward" his case. Brief for appellant at 22. We find that Lightspirit has failed to present this claim with adequate particularity.

In order to preserve a claim of ineffective assistance of counsel for postconviction review, appellate counsel need only make specific allegations of deficient conduct, not of prejudice. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). However, a generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Id.* In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

In his fact section, Lightspirit states that two prospective jurors indicated they had previously served on a jury in a criminal case and rendered a guilty verdict, another juror had been

convicted of negligent child abuse, and the jury consisted of all women after both parties exercised their strikes. In his argument regarding ineffective assistance of counsel, however, Lightspirit does not point to a particular juror or jurors as being biased.

Lightspirit's vague assignment of error does not specify which juror should have been stricken or what the supposed bias was. This lack of specificity does not permit us to determine whether we can resolve the claim based upon the trial record, nor would it permit a potential postconviction court to recognize whether a claim relating to a particular juror had been raised on direct appeal. We therefore conclude that Lightspirit has failed to make sufficiently specific allegations of deficient conduct relating to alleged juror bias, and we dismiss his claim.

### (d) Failure to Adequately Cross-Examine Witnesses

Lightspirit next asserts that his trial counsel was ineffective for failing to adequately cross-examine the State's witnesses "to highlight the differences in their versions of the assault." Brief for appellant at 23. Lightspirit does not specify which witnesses his counsel failed to adequately cross-examine nor does he specify which differences in their testimony his counsel failed to highlight. Accordingly, we conclude that Lightspirit has not pled sufficiently specific allegations of deficient conduct, and we dismiss this claim.

### (e) Failure to Question Officer Regarding Police Records

Lightspirit next argues that his trial counsel was ineffective for failing to question one of the investigating officers regarding whether he accessed police reports and documents related to the case after they were first logged into the online police records system. Lightspirit argues that such examination may have revealed a possible police bias against him. The record does not reveal whether the officer accessed any documents or what information those documents contained. Accordingly, we conclude that the record is not sufficient for us to review this claim of ineffectiveness on direct appeal.

### (f) Failure to Call Additional Witness

Lastly, Lightspirit alleges that his trial counsel was ineffective for failing to call Dakota Heinzen as a witness at trial. The record reveals that Heinzen was another homeless man present at the campsite around the time of the assault, but the exact nature of his proposed testimony is unknown. Accordingly, we conclude the record is insufficient for us to adequately review this claim of ineffectiveness.

### 4. UNFAIRNESS

Lightspirit's final assignment of error is that the totality of the circumstances establishes that he did not receive a fair trial. Lightspirit makes no argument in support of this assignment of error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015). Accordingly, we do not address this assignment of error.

### VI. CONCLUSION

The record is inadequate for us to address Lightspirit's assertions that his trial counsel was ineffective for failing to present additional alibi evidence, for failing to question police about

accessing records, and for failing to call an additional witness. We find no merit to Lightspirit's remaining assignments of error. Accordingly, we affirm Lightspirit's convictions and sentences.

AFFIRMED.